MOWER and wife *v.* KIP and others.

The old statute relating to the lien of judgments, and the provisions upon the same subject
  in the Revised Statutes, are substantially the same ; and under the old law, a senior
  judgment loses its lien at the expiration of ten years as to all judgments recovered or
  mortgages given in the mean time ; and after that period it becomes a junior judgment.
  A revival by *sci. fa.* is of no effect to save it from the operation of the statute ; and it
  creates no new lien, except for the costs of the proceeding.
Although a judgment be ten years old, yet, as to an assignment for the benefit of creditors

**1833.**

**MOWER**
**_v._**
**KIP.**

made afterwards by the debtor, it retains its priority; the assignee not being a purchaser, nor the assignment an incumbrance within the meaning of the statute.

An old judgment which does not carry interest is not aided in that particular by a _sci. fa._ Neither at law nor in equity can interest, in ordinary cases, be computed upon a bond beyond the amount of the penalty. It cannot, therefore, be allowed where a mortgagee files a bill of foreclosure on a simple mortgage given with a bond confined to the payment of a specified sum and interest; yet, if the mortgagor file a bill to redeem, equity might act upon a different principle and not permit him to do so, unless he paid all the interest due, even though it might exceed the penalty of the bond.

The penalty in a bond is looked upon as the debt.

---

_February 4._
**1834.**

_Scire facias._
_Bond._

The bill in this cause was filed in the month of February one thousand eight hundred and thirty-one for foreclosure and a sale of mortgaged premises; but the important points in it related to the priority of a judgment.

In the year one thousand eight hundred and twelve, James J. Roosevelt recovered a judgment against Cornelius Kip, since deceased, for two thousand two hundred and seventy dollars and forty-nine cents, which was docketted on the first day of August in the same year.

On the twenty-seventh day of May one thousand eight hundred and thirteen, the said Cornelius Kip gave his bond to Mary ———, then a feme sole but now the wife of James B. Mower, in the penalty of three thousand and three hundred dollars, conditioned for the payment of one thousand six hundred and fifty dollars, with interest, on or before the first day of June thereafter; and in order to better secure the same, he, with his wife, Susan Kip, who was a defendant in the cause, executed the mortgage which was to be foreclosed. The mortgage was recorded on the sixth day of July one thousand eight hundred and thirteen.

Afterwards, Cornelius Kip became insolvent, and, upon obtaining the benefit of the insolvent act of this state and on or about the twenty-eighth day of February one thousand eight hundred and sixteen, he made an assignment of his estate for the benefit of his creditors—pursuant to the statute—to Samuel Jones, his assignee.

The insolvent died in the month of January one thousand eight hundred and twenty-two: but, previous to his death, James J. Roosevelt had revived the judgment against him by _scire facias_ and issued an execution, which had been re-

turned unsatisfied.  The judgment upon the *scire facias* was perfected on the nineteenth day of January one thousand eight hundred and twenty-one.

The lands, subject to the mortgage and judgment, had been sold under a provisional decree in this cause ; and the proceeds remained, to abide a final decree.  The amount was stated to be sufficient to satisfy both the mortgage and judgment ; and, therefore, as between the complainants as mortgagees and the judgment creditor, it was not important which was preferred : but the question of priority was nevertheless material as affecting the surplus to which the right of dower of the widow of Cornelius Kip would attach.

The judgment, as it will be seen was originally the prior incumbrance ; and the question to be decided was, whether it ceased to be a lien, at the expiration of ten years, so far as it ran against the mortgage of the complainants ?

Mr. *C. O'Connor* for the complainants.

Mr. *J. J. Roosevelt, Jr.* for the judgment creditor.

Mr. *D. S. Jones* for the assignee, the widow, and the infant children of the mortgagor.

THE VICE-CHANCELLOR :—The mortgage in this suit was given less than a year after the judgment had been recovered ; the latter then bound the land as a subsisting lien ; and as this was known to the mortgagee, she must be considered as *taking the mortgage subject to the judgment.*  Still, if the statute embraces the case, the mortgage would thereby be rendered secondary to the judgment for only ten years. This statute was first passed in the year one thousand eight hundred and eleven.  It declared that all judgments thereafter rendered should cease to be a lien or incumbrance on any real estate, as against any *bona fide* purchasers or subsequent incumbrances by mortgage, judgment or otherwise, from and after ten years from the time the same should be docketted.  It was reenacted in the revision of one thousand eight hundred and thirteen ; and a provision to the same effect is contained in the present Revised Statutes—although

differently expressed and rendered more clear. I am bound to look at the wording of the law as it originally stood. It is explicit. Judgments are to cease as liens from and after ten years from the time they are docketted: not, however, as to the debtors and their heirs—but only as against *bona fide* purchasers and subsequent incumbrances. The word " subsequent," as here used, is susceptible of a two-fold application. It may so apply as to embrace those purchases or encumbrances created at any time after the judgment: and it may be limited to such and such only as are created after the expiration of the ten years spoken of by the statute. The latter construction is contended for by the counsel of the present judgment creditor. The question does not appear to have been distinctly raised in any reported case. It was not necessary to consider it either in *Little* v. *Harvey,* 9. Wend. 157. or in *Graff* v. *Kip,* 1. Edwards' R. 619. ; because, in those cases second incumbrances were not created until after the lapse of ten years from the first judgments. In this particular, the present case is different. But, in *Ex parte The Peru Iron Company,* 7. Cow. 540., there was abundant room for the question now presented. In that case, the subsequent judgments were all obtained within ten years of the first ; and yet the learned counsel who argued there, appear to have treated them throughout as subsequent encumbrances against which the senior judgment ceased to be a lien at the expiration of the ten years from its date—the court too, it is clear, from the opinion delivered by the chief justice, likewise so considered them. The decision in this case appears to establish the principle that a senior judgment loses its lien at the expiration of ten years as to all judgments recovered in the meantime ; and that it is necessarily postponed as to these and becomes a junior judgment as to them—which can only be upon the ground of " subsequent incumbrances" in the statute meaning all such as are subsequent to the judgment thus postponed : and not merely such as bear date subsequent to the expiration of ten years. This case occurred in one thousand eight hundred and twenty-seven ; and I think it settles the true construction of the original statute upon the point now raised. The Revised Statutes, whether intended to introduce a new law or merely

to adopt the former provision according to its true sense and meaning are, at any rate, too explicit on the point to admit of a doubt. The words are, " as against incumbrances subsequent to such judgment;" and Mr. Justice Sutherland, in *Little* v. *Harvey*, supra, considered the two statutes substantially the same. He observed, it was " intended to operate like a statute of limitations, as an absolute bar upon judgments of more than ten years standing ;" and he also remarked that if the party holding a judgment wishes to secure to himself the full benefit of it against the property of his debtor where other incumbrances intervene, he must not only sue out execution upon the judgment, " but the sale must take place within the ten years," unless he has been restrained by injunction, which the statute provides for. The revival by *scire facias* is of no effect to save the judgment from the operation of the statute. I am of opinion the judgment has lost its priority and is to be postponed to the complainant's mortgage.

The next question is, whether this judgment creditor is also to be postponed to the claim of the assignee under the insolvent act? I consider that he is not. Such an assignee is not a purchaser according to the general acceptation of the term. Nor is the assignment an incumbrance within the meaning of the statute. The assignee does not take in the character of a purchaser or as mortgagee or one having a lien or demand upon the property : but he takes the property itself. The statute under which the proceeding is had, operates as a *cessio bonorum* and the assignee is vested with both the legal and equitable title and estate of the debtor in trust for the creditors. He stands as a trustee of the whole property ; and a trust results, in the first place, for the benefit of mortgagees and judgment creditors whose prior liens are preserved to them. It is expressly declared to be his duty to redeem all mortgages and satisfy all judgments : 1. Laws of N. Y. 1813. p. 408. §. 19. It would be contrary to every principle to permit the trustee to take advantage of the delay against his *cestui que trust;* and I think the statutory limitation to the liens of judgments could not have been intended to apply to such cases.

The next point made in relation to the judgment is, that,

22

from the lapse of time, it must be presumed to have been paid and satisfied. At common law, the neglect or omission to act upon a judgment for twenty-years affords *prima facie* evidence of its having been satisfied; and the enforcement of it will not be allowed, until this presumption is repelled by proof of some acknowledgment of the existence of the debt within the last twenty years or the delay be satisfactorily explained : Matthews on Pres. Evid. 358. The circumstance of the debtor's representing the judgment in his schedule or list of debts in the year one thousand eight hundred and sixteen, on the occasion of his taking the benefit of the insolvent act, stated in the answer of Mr. Roosevelt, as also the subsequent revival of the judgment by *scire facias* and the issuing of an execution, are abundantly sufficient to place the judgment beyond the reach of the common law rule just stated. Nor does the presumption of payment yet arise as allowed by statute. The act on the subject was first passed April 3, 1821 ; and it was thereby declared that a presumption of payment should apply to all judgments in the same manner as to sealed instruments, that is to say, as to judgments rendered before the passing of the act, the presumption should apply after twenty years from its passing and to all future judgments after twenty years from their being docketted : Laws of 1821 p. 246. §. 4. A like provision, as to past judgments, is contained in 2. R. S. 301. §. 46. ; and a similar provision is made by the section which follows in regard to future judgments. But, in no case can any presumption of payment arise under the statute before the year one thousand eight hundred and forty-one ; and until then, if any judgment is to be affected by a presumption of payment, it must be a presumption of common law—and that I have shown is repelled in the present case.

It is also said, that even if the judgment remains due and unpaid, still interest cannot be allowed upon it in equity. This judgment is stated to have been entered up by confession, founded upon a promissory note given for money lent. It would, therefore, draw interest, although not a case within the act of 1813: 1. Laws N. Y. 506. §. 50. This act, which authorizes the collection of interest by execution, only extends the authority to executions issued upon judg-

ments thereafter to be recovered. In order to have a right to interest at law, an action of debt upon this judgment would be necessary; and in such an action, it is a matter of course to allow interest as an incident of the debt and to consider it a specialty claim which the statute of limitations will not bar. The case of *Sayre* v. *Austin*, 3. Wend. 496. went to this point. It was an action of debt on two judgments obtained in the year one thousand eight hundred and four and interest was allowed to be recovered by way of damages for detention of the debt for the whole period (upwards of twenty years) and to an amount far exceeding the principal sums. The law is the same in South Carolina: *Winslow* v. *Assignees of Ancrum*, 1. M'Cord's C. R. 104. Still, interest accruing upon judgments recovered previous to the law authorizing it to be collected on executions does not become a lien upon lands until it is included in a fresh judgment: 1. Hov. Suppl. to Vesey, Jr. 238. 239.; *Mason* v. *Sudam*, 2. J. C. R. 180.; *De La Vergne* v. *Evertson*, 1. Paige's C. R. 182. It is very different with respect to judgments recovered after the statute: for, by force of the authority to levy interest as well as principal, the former becomes equally with the latter a lien upon the lands from the time of rendition of the judgment. Hence, as I apprehend, arises the practice in our own Court of Chancery, of computing interest upon judgments which are sought to be satisfied out of surplus proceeds of mortgaged lands or out of the sales of real property under decrees and upon which realty the judgments were liens. Still, this can only apply to such of them as have been recovered since the thirteenth day of April one thousand eight hundred and thirteen. Judgments of a prior date have not the same effect and operation in respect to the matter of interest; and I am not aware that a subsequent revival by *scire facias* can give them such an effect. I have not seen the record of the judgment on *scire facias* in the present case: but it has been generally considered that the effect of a judgment on *scire facias* is not to create a new lien, except for the costs of the proceeding. Chief Justice Savage says, the effect of it is merely to make the execution regular: and not to change the nature of the lien as to the judgment itself: *Ex parte Peru Iron Company*, supra.

1833.

MOWER
*v.*
KIP.

It appears to me, therefore, that Mr. Roosevelt has no lien, by virtue of the judgment, beyond the principal sum due upon it.

The court cannot, upon any other ground, allow interest upon the judgment to be paid out of the fund, without prejudicing the rights of the assignee under the insolvent act—who is entitled to receive for the general benefit of creditors at large, all that may remain of the funds, after satisfying such demands as were liens and incumbrances upon the property prior to the assignment.

The next point is, as to the amount to which the complainants are entitled. The interest claimed by them, when added to the principal of their debt, swells the amount beyond the penalty of the bond; and the question is, whether they can be permitted to receive more than the penalty?

It may be considered as settled law, that a surety in a bond is not liable beyond the penalty. But, whether a recovery can be had against the principal obligor for a greater sum, is a question about which there has been a contrariety of opinion; and the weight of authority, at this day, appears to be that, in an action at law upon the bond, the recovery against the principal must be limited in like manner: *Clark v. Bush*, 3. Cow. 151. It would seem, from the report of the case of *Smedes* v. *Houghtailing*, 3. Caines' R. 48. (noticed in *Clark v. Bush*) that the Supreme Court then intended to adopt the rule broadly and generally that interest is recoverable beyond the penalty of a bond: but, on account of the expressions which fell from the chief justice, as reported, and what has dropped from succeeding judges of the same court and upon deliberate examination of all the other cases, it can hardly be deemed an authority to such an extent. Whatever fluctuation there may have been upon the subject, the matter is now settled in the law and equity courts of England. Interest cannot be computed beyond the amount of the penalty. The latter is considered the debt; and, consequently, it cannot be increased by any computation of principal with interest: *Mackworth* v. *Thomas*, 5. Ves. 329.; *Clark* v. *Seton*, 6. Ib. 411; 1. Coventry's Powell on Mort. 15. (*n*) and 355. (*n*), where all the cases are collected and arranged; see also Ram on Assets, 572. Special circumstan-

And see *Hughes* v. *Wynne*, 1. Mylne & K. 20.

1834.

MOWER
*v.*
KIP.

ces are, however, sometimes admitted to take a case out of the general rule ; and particular circumstances may occur to form an exception in the view of a court of equity and where this court will decree payment of interest or other sum of money beyond the penalty of a bond. This, for instance, may happen where a mortgage is taken in such a manner as to secure the payment, not of the money due on the bond, but of the sum for which it was given, together with all interest to accrue upon the same. The distinction is clearly exemplified in the case of *Clark* v. *Lord Abingdon,* 17. Ves. 106. Sir William Grant, who decided *Clark* v. *Seton,* also determined this case, where the creditor had two securities, one by bond and the other a mortgage. He remarked, if the creditor sues upon the bond, he cannot have interest beyond the penalty. But, it is to be observed, the mortgage there had been given to secure payment, not of the bond, but of the *sum* for which the bond was given, together with with all interest which might grow due upon it : So that the same sum was differently secured by different instruments—in the one by a penalty and in the other, by a specific lien. The creditor could resort to either of them. If he went upon his mortgage, the penalty was out of the question. The Master of the Rolls, under the particular circumstances of the case, held, the whole of the interest to be recoverable, even though it might extend the debt beyond the limit of the other security, namely, beyond the penalty in the bond. By resorting to the mortgage and seeking payment of the principal and interest secured by it generally (and the mortgage not being confined to the payment of the money secured by the bond, which, in no event, could exceed the sum the obliger had bound himself to pay) all difficulty arising from the terms of the latter instrument was avoided. It is upon the ground of the penal sum mentioned in a bond being the stipulated recompense for its non-performance that the party who accepts it cannot be permitted to claim beyond such amount when he comes, either into a court of law or equity, for satisfaction of the bond itself. It follows, I think, that in foreclosing a mortgage given to secure the payment of a bond or the money to become due upon the bond, according to its terms and condition, payment to the amount of the

HARVARD SCHOOL LIBRARY

1833.

MOWER
v.
KIP.

penalty must be deemed a full satisfaction and interest be-yond it cannot be allowed. It was so decided in the court of exchequer: *Lloyd* v. *Hatchett*, 2. Anstr. 525. If the mort-gagor should file a bill to redeem, a court of equity might act upon a different principle and not permit him to do so, unless he paid all the interest due, even though it might ex-ceed the penalty of the bond. This would be an equitable condition: *Peers* v. *Baldwin*, 2. Eq. Cas. Abr. 611. Pl. 4.

In the present case, the complainants proceed to obtain satisfaction of their bond and mortgage after a lapse of about eighteen years and without alleging any special circum-stances as a cause for the delay or by which they have been hindered from collecting the interest money or in proceeding to foreclose the equity of redemption. The bond and mort-gage appear to be in the usual form. The latter recites the former; and the object is stated to be, " for the bet-ter securing and more sure payment of the said sums of money mentioned in the said bond according to the true intent and meaning thereof." The mortgage was to be void upon payment " of the sum of money mentioned in the con-dition of the aforesaid bond or obligation at the time and in the manner therein mentioned, according to the true intent and meaning thereof;" and the mortgagor's covenant to pay embraces the same form of words, while, in default of pay-ment, the power of sale authorizes the mortgagee, out of the monies to arise from such sale, " to retain the principal and interest which should then be due on the said bond or obliga-tion, according to the condition thereof," &c.—rendering the overplus to the mortgagor. Thus, it is manifest, that the whole scope of the mortgage was to secure the payment of the principal and interest money by virtue of the bond. It has reference only to the debt created by the latter; and does not appear to have been intended as a distinct security for the payment of the same sum of money, with whatever interest might accrue independently of the bond. It is con-fined to the amount in this bond; and the complainant's right to interest must be similarly circumscribed. It is not a case within the principle of *Clark* v. *Abingdon.*

The complainants must be restricted in their claim for principal and interest to the amount of penalty in the bond.

This amount, together with their costs, are to be first paid out of the fund. The costs of the guardian *ad litem* for the infant defendants must be paid in preference to the complainants. They may, perhaps, have been unnecessarily made parties ; but, for greater caution, it was not improper to bring them before the court. At all events, their guardian is entitled to his costs ; and, under the circumstances, it would be unreasonable to compel the complainants to pay them. The amount here decreed must then be paid to the complainants out of the fund, with their costs. Next, the widow is entitled to her dower. After this is provided for, either by setting apart one third for her use or paying her a gross sum at her election, together with her costs, the principal sum due upon the judgment in favor of Mr. Roosevelt is to be paid, together with his costs. And the mortgagor's assignee is entitled to the residue for the benefit of the creditors generally or the heirs at law, after deducting his costs.

Decree accordingly.